# Commonwealth ex rel. *v.* McConnell, Appellant.

*Lunacy—Committee—Investment of funds—Surcharge.*

Where a committee of a lunatic, without an order of court, invests the lunatic's estate in the bonds of a private corporation, secured by a mortgage, and the bonds become worthless by the bankruptcy of the corporation, he is personally liable for the loss. The court will not four years after the investment was made, and after the bonds had become worthless, ratify and approve the investment nunc pro tunc.

Argued Oct. 13, 1909. Appeal, No. 202, Oct. T., 1909, by defendant, from decree of C. P. Beaver Co., Sept. T., 1909,

No. 200, dismissing exceptions to auditor's report in case of Commonwealth ex rel. Fairman Algeo v. Mary Riley, a lunatic, W. A. McConnell, Committee.  Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and STEWART, JJ.  Affirmed.

Exceptions to report of A. P. Marshall, Esq., auditor.

From the record it appeared that the committee of Mary Riley, a lunatic, William A. McConnell, invested several thousand dollars of the lunatic's estate in bonds of the Beaver Valley Brewing Company.  These bonds were secured by a mortgage.  The brewing company subsequently went into bankruptcy, and the bonds became worthless.  The auditor surcharged the committee with the loss, amounting to $11,460. Exceptions to the auditor's report were overruled in an opinion by HOLT, P. J.

*Errors assigned* were in overruling exceptions to auditor's report.

*Frank H. Laird,* for appellant.—The investment was a proper one: Twaddell's App., 5 Pa. 15; Spaulding v. Bullock, 20 Pa. Superior Ct. 301; Hain's Est., 167 Pa. 55; Neff's App., 57 Pa. 91; Calhoun's Est., 6 Watts, 185; Crist v. Brindle, 2 Rawle, 121; Eyster's App., 16 Pa. 372; Cridland's Est., 132 Pa. 479.

*Frank E. Reader,* of *Hice, Morrison, Reader & May,* for appellee.—The surcharge was proper: Earley's App., 103 Pa. 273; Barker's Est., 159 Pa. 518; Huey's Est., 1 Chester Co. Rep. 170; Barker's Est., 32 W. N. C. 540; Frankenfield's App., 102 Pa. 589; Hemphill's App., 18 Pa. 303; Black's Case, 18 Pa. 434; Renninger v. Thompson, 6 S. & R. 1.

In this case the decision of the question as to approving the investment was peculiarly within the discretion of the court, for the reason that the request was for an order nunc pro tunc. The making of such an order is always discretionary: Ley v. Union Canal, 5 Watts, 104; Weidner v. Matthews, 11 Pa. 336; Lance v. Bonnell, 105 Pa. 46.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

We are not inclined to disturb the rule announced by Chief Justice BLACK more than half a century ago in Hemphill's App., 18 Pa. 303, and since recognized and followed by this court. In delivering the opinion in that case the Chief Justice said (p. 305): "In England it has been held for more than a century past to be settled law, that a trustee can only protect himself from risk, when he invests the trust fund in real or government securities or makes the investment in pursuance of an order by the court. . . . The same rule has been adopted in its whole length and breadth by the courts of New York and New Jersey. . . . In Pennsylvania this doctrine does not appear ever to have been either affirmed or denied. . . . But the time has come when the interests and rights of trustees, as well as orphans, married women and insane persons, demand the settling of it, and we think the rule here ought to be as it is elsewhere." In Worrell's App., 23 Pa. 44, KNOX, J., delivering the opinion said (p. 48): "It may now be considered as settled law, that in Pennsylvania an investment by a guardian or other trustee, unless authorized by the deed of trust, in the stock of an incorporated company, whether a bank, railroad, canal, manufacturing, or mining corporation, cannot be made at the risk of a ward or other cestui que trust. It is unnecessary to repeat the reasons which are the foundation of this rule. In England and in this country the adoption of the rule has been found essentially necessary for the protection of those who could not protect themselves. It will not do to say that because prudent men sometimes invest their own money in such stocks, guardians may legally invest the estate of their wards in like manner." About thirty years later after full argument and due consideration, we recognized and enforced the rule announced in those cases in Frankenfield's App., 11 W. N. C. 373. It was said (p. 374): "This being so, the law regulating investments by committees of lunatics becomes applicable to the case and controls it. The act of June 12, 1836, sec. 25, expressly directs that such investments must be made under the direction of the court of common pleas, and only exempts the com-

mittee from liability for loss when he pursues this course and in good faith. In Hemphill's App., 18 Pa. 303, it was firmly and definitely settled that a trustee can only protect himself from risk when he invests the trust fund in real or governmental securities, or makes the investment in pursuance of an order of court."

The doctrine thus firmly established in this state prohibits a trustee from investing the estate of his cestui que trust in the bonds or stocks of a private corporation. The people of the commonwealth have attempted to enforce the rule by art. III, sec. 22, of the present constitution, which prohibits the general assembly from authorizing the investment of trust funds by a trustee in the bonds or stocks of any private corporation. Time has tested the wisdom of the rule, and, as our cases declare, it is firmly established in this commonwealth.

The legislature has provided that trustees may invest their funds on real estate security or in securities of certain public corporations by consent of the court, and that the trustee shall then be exempt from liability for loss on such investment. In addition to that legislation, the general assembly passed the Act of June 13, 1836, P. L. 597, 2 Purd. (13th ed) 2396, sec. 34 of which provides: "It shall be lawful for any committee as aforesaid, by the leave and under the direction of the court of common pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks or upon such security as shall be approved of by such court; and if such investment be made bona fide, the committee making the same shall not be liable for any loss that may arise thereby."

The committee of the lunatic in the present case invested part of the funds of the estate in first mortgage bonds of the Beaver Valley Brewing Company, a private corporation, and it appears that the company has become bankrupt. The beneficiary objected to allowing the committee a credit in his account for the bonds. The auditor and the learned court below refused to allow the credit, and the committee has appealed. Under our authorities, it is apparent that the investment was illegal and the committee had no right to make it. This is so well settled by the decisions we have cited above that a dis-

cussion of the question is unnecessary. While this may be a hardship upon the committee, he could have relieved himself from all liability for the investment of the funds of the cestui que trust by applying to the common pleas for an order of court. The legislature has made provision for the protection of the committee of a lunatic in the investment of trust funds, and the committee should avail himself of the statute. The lunatic is the ward of the court and the committee is simply its bailiff or agent in protecting him and his estate. There is every reason, therefore, why the court should be consulted about the investment of his funds. This was the idea of the legislature when it enacted the statute of 1836 authorizing the committee to obtain the protection of the court in the investment of a lunatic's estate. If, therefore, the committee disregards the act of assembly and invests the trust funds in other than statutory securities and without the consent of the court, he does so at his own and not at the lunatic's peril. The lunatic is helpless, unable to protect himself or his estate, and hence the legislation, enacted for his protection, should be rigidly enforced.

The court properly refused to ratify the investment on the application of the committee. As we have seen, the committee should not have invested the funds of the lunatic in the bonds of the brewing company, a private corporation, and at the time the application was made for the ratification of the investment, the brewing company was insolvent and in bankruptcy. The application was four years after the investment had been made, and after the auditor had held that the investment was illegal and surcharged the committee. To grant the application and approve the investment nunc pro tunc as of the time it was made, would, under the circumstances of the case, encourage injudicious and illegal investments of the estates of cestuis que trust. We are all of opinion that the learned judge did not commit error in declining to ratify the investment.

The assignments of error are overruled and the decree of the court below is affirmed.