## Maroney's Estate.

Argued February 1, 1933.   Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Lee C. Beatty,* for appellant.—The bond and mortgage constitute together one security:  Com. v. R. R., 122 Pa.

306; Com. v. Dabbierio, 290 Pa. 174; Com. v. McConnell, 226 Pa. 244; Twaddell's App., 5 Pa. 15; Frankenfield's App., 11 W. N. C. 373; Hemphill's App., 18 Pa. 303.

*Charles F. C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for appellee, cited: Attorney General v. Bowles, 3 Atkins 806; Com. v. McConnell, 226 Pa. 244.

OPINION BY MR. JUSTICE LINN, March 20, 1933:

On the filing of the trustee's partial account showing a balance for distribution, a beneficiary excepted to an investment "shown in the account, viz.: 'Mortgage: Farmers Investment Company, Interest, February and August 20th, at rate of 5.6%, $7,100,' for the reason that said Farmers Investment Company is a private corporation,......of Pennsylvania, and that the said mortgage is held as collateral security to the bond [in the penal sum of $14,200] of the said Farmers Investment Company, and consequently is an investment in a bond of a private corporation, which is prohibited by section 22 of article III of the Constitution of Pennsylvania."

The mortgage, duly recorded, maturing February 20, 1933, is of lot number 43, on Riverside Road, Penn Township, Allegheny County, Pa., 45 feet by 120 feet, together with a two and one-half story brick dwelling house and a garage erected on the lot. The petition for distribution prayed that the corpus be awarded back to the accountant to continue the trust in accord with the will. It was shown that the fair value of the mortgaged property was $13,800. The learned president judge dismissed the exception, held that the investment was permitted by section 41 of the Fiduciaries Act of 1917, P. L. 447, amended April 26, 1929, P. L. 817, and that the statute, to the extent relied on, was not in conflict with article III, section 22, of the Constitution.

The constitutional provision is: "No act of the General Assembly shall authorize the investment of trust funds by executors, administrators, guardians or other trustees, in the bonds or stock of any private corporation, and such acts now existing are avoided, saving investments heretofore made." Section 41 of the Fiduciaries Act, as amended in 1929, authorizes investment, inter alia, in "first mortgages on real estate in this Commonwealth, securing bonds or other obligations not exceeding in amount two-thirds of the fair value of such real estate......" The challenged investment (a) is a first mortgage, (b) on real estate in the Commonwealth, (c) in amount less than two-thirds of the fair value of the land. The Farmers Investment Company is mortgagor, and the accountant mortgagee. If made by an individual, its legality could not be questioned on the ground taken by exceptant.*

Appellant's argument is not that a trustee may not lawfully invest in the real estate mortgage of a private corporation, if no bond is taken, but that this bond and mortgage together constitute one security, and that the investment is condemned because the trustee also received a bond in addition to a mortgage; that, while the mortgage is a real security, which would have constituted a legal investment if the mortgage had been made by an individual, it is within the prohibited class because the trustee also took a bond. The argument confuses the relations of the bond and mortgage. Properly understood, a bond and mortgage, though given in a single transaction, are more than a single security and have always been so regarded. In Meigs v. Bunting, 141 Pa. 233, 239, 21 A. 588, we said, "A bond and mortgage are

---

* The adjudication states that "No negligence in making the investment is alleged or suggested. It is a clear case. The facts show that the investment was carefully made and the only question is whether the trustee should suffer a loss on the mortgage, if any there should be, or whether the cestui que trust should be the loser."

distinct and separate securities, though for the same
debt......and the satisfaction of one security will not
in fact be satisfaction of the other, unless the parties so
intend, or the debt be actually paid: Fleming v. Parry,
24 Pa. 47; Seiple v. Seiple, 133 Pa. 470, 19 A. 406." *

The word "bond," as used in the constitutional provi-
sion, must of course be taken "in its popular sense as the
people who adopted it and made it their charter of gov-
ernment must have understood it when they voted on
it": Com. v. Dabbierio, 290 Pa. 174, 138 A. 679. Exam-
ination of the history of the time will reveal that the
word was not intended to include a bond accompanying
a conveyance of the land in mortgage for the obvious
reason that the mortgage may stand alone as the invest-
ment. "Bonds and stock of any private corporation"
were investments of the class generally known as per-
sonal securities in contrast with investments in real
estate, or real securities, a term that, in 1873, had been
familiar for more than 100 years. In Attorney General
v. Bowles, 3 Atk. 806, 26 Eng. Rep. 1260, Lord Chan-
cellor HARDWICKE said "......but here, the money is
not only directed to be laid out in land, but in some real
security. I can take these words only in the common
sense and acceptation; for there is a known established
distinction in this court between government and real
securities, and the latter means mortgages or other en-
cumbrances affecting land. The word 'real' is a term
adopted in the law, and can never be understood in any
other sense than landed securities;......" In Hemp-
hill's Est., 18 Pa. 303, the same distinction was recog-
nized, and in Com. ex rel. v. McConnell, 226 Pa. 244,
75 A. 367, it was reaffirmed. The term real security was
incorporated in our legislation as early as 1824, P. L.
194.

The bond or note of an individual or a corporation is

---

* This distinction stands out clearly when the history of the
mortgage in this State is considered. See Lloyd: The Mortgage
Theory of Pennsylvania, 73 U. P. Law Rev. 43.

a mere personal security (Baer's App., 127 Pa. 360, 18 A. 1) a class that also includes the bonds issued by railroad and other utility corporations, whether secured by mortgages on their franchises and land or not. See Com. v. Susq. & Del. R. R. Co., 122 Pa. 306, 320, 15 A. 448; Perry, Trusts, 7th edition, volume 1, page 768.

The purpose, as well as the popular understanding of article III, section 22, undoubtedly was that investment in personal securities of private corporations should not be authorized by legislation. By section 14 of the Act of March 29, 1832, P. L. 190, fiduciaries were authorized, with the approval of the Orphans' Court, to invest in specified public obligations,* "or on real securities"; by section 2 of the Act of April 13, 1854, P. L. 369, they were authorized "to invest trust moneys in ground rents or other real estate by leave of the proper court." It appears not to have been until 1870, that the field of investment was enlarged to include personal securities of corporations. For then, by Act of April 1, 1870, P. L. 45, the provisions of section 14 of the Act of 1832, supra, were extended to include bonds of the Pennsylvania Railroad Company secured by its general mortgage of July 1, 1867; by an Act of March 29, 1872, P. L. 31, to the general mortgage bonds of the Philadelphia & Reading Railroad Company; by an Act of April 3, 1872, P. L. 833, to the general mortgage bonds of the Lehigh Coal & Navigation Company, and, by the Act of April 4, 1873, P. L. 59, to bonds issued by the Pennsylvania Railroad Company under an Act of February 7, 1873. The necessity for this enlargement is legislative recognition that bonds of the kind specified in these statutes were not real securities as defined for purposes of the classification referred to, for if they had been, the legislation would have been unnecessary. The effect of this radical change in economic policy became the subject of serious discussion in the constitutional convention of 1873 (De-

---

* Extended to obligations of counties, cities, school districts and municipal corporations by Act of May 8, 1876, P. L. 133.

bates: volume 2, page 744 et seq., volume 5, page 293 et seq.) and was ultimately reflected in the prohibition on future legislation contained in article III, section 22. It is to be noted that by the Acts of 1832 and 1854, supra, the right to invest in real securities was general, and not limited to mortgages by individuals. The corporate mortgage, made as in this case, is as completely a real security as the mortgage of an individual. Section 22 does not in terms deny power to authorize investment in real securities given by corporations, and there is nothing to indicate intention to change the policy of the law theretofore existing as respects trust investment in real securities, nothing to show that it was intended to operate differently on the mortgage of a given tract of land if given by a corporate owner of the tract direct to the mortgagee than if the same mortgage were made by an individual owner. On the contrary, the bonds and stock that are condemned as trust investments are of the class designated as personal securities, of which those mentioned were well-known examples.

Decree affirmed, costs to be paid by appellant.