## Blacho's Estate

*Felix Piekarski*, for exceptant.
*Harry J. Alker, Jr.*, and *Shippen Lewis*, contra.

KUN, J., June 30, 1938. — The account filed by the guardian showed investments inter alia in certain mort-

gages, three pieces of real estate taken in foreclosure, and a mortgage participation certificate, to which the administrator of the estate of the deceased alleged weakminded person filed exceptions on the ground that the guardian had not obtained leave or approval of the court before making the investments. The auditing judge overruled this contention, and dismissed the exceptions. The matter is now before the court in banc on exceptions to the adjudication. Because of views expressed in the adjudication by the auditing judge with reference to the effect of the acts of assembly hereinafter referred to, following the views expressed by Judge Gordon of Court of Common Pleas No. 2, with which we do not agree, we find it necessary to file this opinion, although we agree that the exceptions to the adjudication should be dismissed on the other ground stated by the auditing judge.

The Act of June 13, 1836, P. L. 589, regulating the handling of estates by committees in lunacy, and extended to apply to the guardians of weakminded persons by the Act of May 28, 1907, P. L. 292, provides:

"It shall be lawful for any committee as aforesaid, by the leave, and under the direction of the court of common pleas having jurisdiction, as aforesaid, to invest the money of a lunatic or habitual drunkard, in such stocks, or upon such security, as shall be approved of by such court, and if such investment be made, bona fide, the committee making the same, shall not be liable for any loss that may arise thereby."

In the matter of the Estate of Mary J. Phillips, a weakminded person, as of Common Pleas No. 2, March term, 1915, no. 4549, Judge Gordon filed an opinion on June 18, 1934, expressing the view that the act referred to is merely permissive, and not mandatory, and that it is not necessary for a guardian of a weakminded person to obtain leave of court before making investments and the auditing judge, quoting from the opinion, approved that view. With that broad statement, we cannot agree. Whereas the statute provides that "It shall be lawful for any committee (in lunacy or guardian of a weakminded

person) as aforesaid, by the leave, and under the direction of the court (having jurisdiction in the matter) . . . to invest the money (of his ward) . . . in such stocks, or upon such security, as shall be approved of by such court", the effect of the quoted ruling is that it is lawful to do so without the approval of the court which obviously is contrary to the statute. In our opinion, the view expressed overlooks the difference between a committee in lunacy or guardian of a weakminded person, who is not a trustee or fiduciary in the usual sense (having the duty to see to the investment of the funds entrusted to him), and a guardian of a lunatic's estate who is no more than the agent of the court to hold, protect, and preserve the property of the lunatic: Commonwealth ex rel. v. Flowers, 326 Pa. 138, 140. Because of that limited status of such a guardian, the statute referred to was passed giving permission to such a guardian to invest the ward's money, obviously as expressly stated in the statute only "by the leave, and under the direction of the court" and "as shall be approved of by such court". The right is permissive in that sense under the limitation stated in the statute, but it is in our opinion not permissive in the sense indicated by Judge Gordon that such a guardian may in general make investments without the approval of the court. Such a guardian has no duty to invest. His duty is to hold the property of the lunatic, and follow out the orders of the court in relation thereto, but if he wants to invest any of the funds "in stocks" or other security he must obtain the approval of the court to do so. In Commonwealth ex rel. v. McConnell, 226 Pa. 244, 248, Mr. Justice Mestrezat, writing the opinion for the court, expressed in unmistakable terms the purport of the statute as follows:

"The legislature has made provision for the protection of the committee of a lunatic in the investment of trust funds, and the committee should avail himself of the statute. The lunatic is the ward of the court and the committee is simply its bailiff or agent in protecting him and

his estate. There is every reason, therefore, why the court should be consulted about the investment of his funds. This was the idea of the legislature when it enacted the statute of 1836 authorizing the committee to obtain the protection of the court in the investment of a lunatic's estate. If, therefore, the committee disregards the act of assembly and invests the trust funds in other than statutory securities and without the consent of the court, he does so at his own and not at the lunatic's peril. The lunatic is helpless, unable to protect himself or his estate, and hence the legislation, enacted for his protection, should be rigidly enforced."

This view has never been departed from by our appellate courts. The only point made in Curran's Estate, 312 Pa. 416, in referring to the McConnell case was that a bond of a corporation was there treated as personal security, without considering the fact that the bond issue was in fact secured by a mortgage on real estate. There had been no discussion on the subject and it was not litigated. It is pointed out in the Curran case, at page 423 that, "An investment in a real security is none the less such investment, if the debt is also represented by an accompanying obligation, whether bond, note or otherwise appropriate." In other words, it is a "legal" investment. As to other investments, "stocks", and other so-called "non-legal" securities, there is no doubt that the law as stated by Mr. Justice Mestrezat in the McConnell case has not been receded from in the slightest degree and it is still required that "the legislation [Act of 1836], enacted for his [the ward's] protection, should be rigidly enforced". This is indicated in the opinion in Curran's Estate (p. 422):

"The investment [in the McConnell case erroneously regarded as non-legal] was not made 'by leave and under the direction of the court of common pleas . . .' and the surcharge was accordingly affirmed." Later, in the case of Riebel's Estate, 321 Pa. 145, 148, the same views as expressed by Mr. Justice Mestrezat and which were

quoted in the opinion of this court, were adopted in a per curiam affirmance of our opinion by the Supreme Court. See also Davidson's Estate, 324 Pa. 90, 94.

We are of the opinion that so far as nonlegal securities are concerned, the Act of 1836 is not merely permissive but it is mandatory. A guardian of an incompetent person may not invest any funds of the ward in any nonlegal securities excepting "by leave and under direction of the court", otherwise he does so at his peril and is liable to surcharge in case of loss. In the instant case, however, it was pointed out by the auditing judge that the investments complained of were all "legal" securities. We agree with him that there is the clearest implication in the McConnell case that the limitation in the Act of 1836, supra, requiring the approval of the court of investments made by a committee of a lunatic or guardian of an incompetent person applies only to so-called "non-legal" securities, as may be found in the following statement included in the quotation from the opinion of Mr. Justice Mestrezat, supra:

"If, therefore, the committee disregards the act of assembly and invests the trust funds in other than statutory securities and without the consent of the court, he does so at his own and not at the lunatic's peril."

There is no sound reason for requiring a committee or guardian to obtain the court's approval to invest in "legal" securities, but there is every sound reason, and as we hold it is required by the Act of 1836, that such committee or guardian obtain leave of the court before he may invest his ward's money in "non-legal" securities.

Inasmuch as the investments here involved are all legal securities, it was not necessary for the guardian to obtain leave of the court before making them, and therefore the guardian cannot be surcharged for the losses which were suffered by reason of those investments.

We agree with the auditing judge's disposition of the other points raised by exceptant.

The exceptions to the adjudication are dismissed.