## Miller Estate

*Meyer, Brubaker & Whitman*, for petitioner.

EHRGOOD, P. J., July 2, 1958.—This matter comes before the court upon a petition filed October 22, 1956,

by the Farmers Trust Company of Lebanon, guardian of the estate of Clara Miller, a person mentally ill, for leave to authorize and empower said guardian aforesaid to file an application on behalf of said Clara Miller, as widow of A l b e r t Miller, deceased, to take against the will of said decedent. . . .

In Harris Estate, 351 Pa. 368, at page 383, the majority opinion of the court holds as follows:

"It is exclusively for the court, which is the real guardian of the incompetent, to determine whether such an election should be made, and well defined principles have been laid down as guides for the exercise of its discretionary power. Chief among these is that the leaning of the law is toward the will: Kennedy v. Johnston, 65 Pa. 451, 454, 455; . . . Fidelity Trust Co. Appeal, 250 Pa. 9, 13, 95 A. 320, 321; Stockton's Estate, 311 Pa. 189, 191, 166 A. 648. The reason for this doctrine is that the intentions of the testator should not be defeated, unnecessarily, by judicial action, for every person, generally speaking, has the right to dispose of his estate according to his own wishes and therefore his will should be upheld as far as possible. It is common knowledge that not every widow disregards her husband's last wishes for the disposition of his property merely because she would obtain a greater quantum of his estate by so doing; sentiment enters into such situations quite as much as considerations of material advantage, and, if she is reasonably provided for in her husband's will *or her wants are otherwise adequately supplied*, it does not follow, just because such provisions may not be as much as she might elect, that she would file an election to take against his will. Therefore, when the court acts on behalf of a mentally defective widow it should not be controlled by mere mathematical calculations of the financial results that would accrue to her in one way or another. Another principle frequently

stated is that, while the court should base its decision on the consideration of all of the circumstances (Kennedy v. Johnson, 65 Pa. 451, 455; Stockton's Estate, 311 Pa. 189, 191, 166 A. 648; German's case, 318 Pa. 200, 203, 178 A. 38, 40), the welfare of the widow is the main object of such consideration, and therefore the interests of her creditors or heirs who might either benefit or suffer by the choice to be made are almost wholly immaterial in the determination of the question. If the needs of the incompetent are satisfactorily provided for, the court should not authorize an election which would result in diverting the property of the deceased husband from his own heirs or legatee to those of his widow": Fidelity Trust Co. Appeal, supra, and other cases cited.

In 1 Hunter, Orphans' Court Commonplace Book, §11, p. 354, it is stated:

"The right of a committee in lunacy to take against a will is not absolute but is within the sound discretion of the court having control of the lunatic's estate; the leaning of the law is in favor of the will, particularly where a taking against it would divert the estate of the deceased from his own blood; where the individual estate of the lunatic and that bequeathed to her are ample for her needs, leave to take against the will will be denied": In re: Bringhurst, 250 Pa. 9; Brooke's Estate, 279 Pa. 341; Stockton's Estate, 311 Pa. 189; Haack's Estate, 29 Dist. R. 535.

In the instant case the admitted facts clearly indicate that decedent husband, at the time he executed his will, was familiar with his wife's mental condition prior to his death and prior to her commitment to the Wernersville State Hospital. It is also clear that the estate of decedent husband was devised and bequeathed to his heirs and next of kin, who were the natural objects of the deceased's bounty. It is also clear that the incompetent wife is now 78 years of age and has a life

expectancy of approximately 5.72 years and is suffering from an incurable mental condition. Further, that the approximate worth of the deceased husband's estate is $17,552.50, and that the incompetent wife's estate is worth approximately $8,000. Further, that the cost of monthly maintenance at the hospital is $124, and that the guardian of her estate is receiving social security benefits in the sum of $81.40 per month. Wherefore, we are of the opinion that there is sufficient estate in the hands of the guardian to pay for the maintenance of the incompetent for the balance of her life, and that the incompetent's brothers and sister would inherit such balance in the event of her death. To hold otherwise would result in one-half of deceased's estate passing to the incompetent's brothers and sister instead of the brothers and next of kin of decedent, whom the deceased, by the provisions of his will, clearly intended should receive as residuary legatees.

In Keefer Estate, 353 Pa. 281, it was held:

"In seeking a testator's intention the court should take into consideration the situation of the testator and the circumstances surrounding him at the time the will was executed." (Syllabus).

In Parkin Estate, 157 Pa. Superior Ct. 476, it was held:

"In ascertaining the intention of the testator, his will is to be construed as of the date of its execution.

". . . A will must be read, and its meaning interpreted, in the light of the circumstances by which the testator was surrounded when he made it and by which he was very probably influenced, chief among which are the condition of his family, the natural objects of his bounty, and the amount and character of his property." (Syllabus.)

In In re Fuller, 56 D. & C. 266, it was held: "The guardian of an incompetent widow who is also the in-

competent's only child and sole beneficiary of his father's estate, will not be directed to elect to take against the husband's will, where the incompetent is in a State institution and the income received through the social security program and through an annuity policy which the son agrees to purchase is sufficient to provide for her proper maintenance and support in the institution." (Syllabus.)

Petitioner, relying on dissenting opinion of the late Justice Allen M. Stearne, in Harris Estate, supra, contends that the cases cited in the majority opinion of the Supreme Court treated the question of the right of an incompetent's guardian to file an election as being a matter turning upon the welfare of the widow, are based upon facts where the surviving spouse is adequately provided for in the will of the deceased spouse, none of the cases cited decide the real interest of incompetent widow in her right to elect to take against the will of her husband, none of the cases cited deal with the matter of a widow who has been disinherited by the terms of her husband's will and that it is not within the province of the court to take away from a widow that which the legislature has given, because of her incompetence. In view of the discussion in cases cited heretofore, we find no merit in the contention of petitioner.

Wherefore, after due and careful consideration of the law and the evidence, we make the following

### Order and Decree

And now, to wit, July 2, 1958, it is hereby ordered and decreed that the prayer of the petition of the Farmers Trust Company of Lebanon that it be permitted and directed to take against the will of Albert Miller, decedent, on behalf of his mentally ill widow, is hereby denied and dismissed. Costs of this proceeding to be paid by the estate of decedent.